

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| United States of America, § | |
| § | Cr. No. 1:19-213-7 |
| vs. § | |
| § | |
| Rudolph Keith Scott, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

I. FACTS AND PROCEDURAL HISTORY

On March 5, 2019, a grand jury charged Defendant Rudolph Keith Scott and 7 co-defendants in a 22-count indictment alleging drug and firearms offenses. Defendant was charged in Count 20 along with co-Defendant Kevin D. Sheppard with knowingly, intentionally, and unlawfully distributing a mixture or substance containing 50 grams or more of methamphetamine on December 4, 2018, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and aiding and abetting the same, in violation of 18 U.S.C. § 2. This is the only charge pertaining to Defendant.[1]

United States Magistrate Judge Paige J. Gossett issued orders for issuance of bench warrants as to all the defendants on March 6, 2019. According to the government, on March 12, 2019, the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Regional Anti-Gang

---

[1] Sheppard also was a named defendant in a related case, *United States v. Gartrell*, Cr. No. 1:19-212.

Enforcement Unit, along with several local law enforcement entities, participated in an arrest operation of defendants charged in multiple federal indictments in South Carolina and Georgia. ECF No. 421, 2. Defendant, however, was not apprehended until on December 4, 2023, after ATF received notice Defendant was a patient at Piedmont Augusta Hospital in Augusta, Georgia, following a car accident. *Id.* Defendant was arrested at the hospital and placed in pretrial detention. He was arraigned before United States Magistrate Judge Shiva V. Hodges on December 5, 2023. Defendant was released on an unsecured bond after a December 7, 2023 detention hearing.

This matter is before the court on Defendant's motion to dismiss the indictment for violations of the Sixth Amendment right to a speedy trial, which motion was filed on May 8, 2024. ECF No. 411. The government filed a response on June 6, 2024. ECF No. 421. The court held a hearing on June 27, 2024. The court concludes Defendant's motion should be granted.

## II.  APPLICABLE LAW

The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. The bounds of this right are impossible to determine with precision. *Barker v. Wingo*, 407 U.S. 514, 521 (1972). A court cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. *Id.* Thus, "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Id.* at 522. The remedy for a violation of the constitutional right to a speedy trial is to dismiss an indictment and to vacate any sentence that has been imposed. *Strunk v. United States*, 412 U.S. 434, 440 (1973).

To determine whether the constitutional right to a speedy trial has been violated, courts must balance four factors: (1) the length of the delay; (2) the government's justification for the delay; (3)

the defendant's assertion of the right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. No factor standing alone is "either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533. In *Doggett v. United States*, 505 U.S. 647, 651 (1992), the Court summarized the test as "specifically recognizing the relevance of four separate enquiries: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."

### III.  DISCUSSION

A.     <u>Length of Delay</u>.

The length of delay is both a factor and "'a threshold requirement because the defendant must establish that the length of the delay is at least presumptively prejudicial to trigger the balancing inquiry.'" *United States v. Chaudhry*, 1:17-cr-270 (LMB), 2024 WL 2854266, at *4 (E.D. Va. June 5, 2024) (quoting *United States v. Villa*, 70 F.4th 704, 713 (4th Cir. 2023)). The Sixth Amendment protections are triggered by arrest, indictment, or other official accusation. *Doggett*, 505 U.S. at 655. In the Fourth Circuit, the issuance of a criminal complaint, arrest warrant, and federal detainer can trigger a defendant's Sixth Amendment speedy trial right. *Chaudhry*, 2024 WL 2854266, at *4 (citing cases).

Defendant contends his Sixth Amendment rights were violated by his arrest nearly five years following the filing of the indictment and subsequent issuance of the arrest warrant. This length of delay between the indictment and arrest is presumptively prejudicial. *United States v. Shealey*, 641 F.3d 627, 634 (4th Cir. 2011) (citing *United States v. Thomas*, 55 F.3d 144, 149 (4th Cir. 1995)); *see*

*also Doggett*, 505 U.S. at 652, n.1 ("Depending on the nature of the charges, the lower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year."). The government acknowledges the length of the delay is presumptively prejudicial and requires a *Barker* analysis. This factor weighs in favor of Defendant.

B.    Reasons for Delay.

The reasons for delay "should be characterized as either valid, improper, or neutral." *Chaudhry*, 2024 WL 2854266, at *5 (quoting *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009)). Courts must focus on the intent of the prosecution when examining the reasons for delay. *Id.* (citing *Hall*, 551 F.3d at 272). An improper reason for delay, such as government negligence, is "weighted heavily against the government," whereas "[v]alid reasons for delaying a trial are weighted in favor of the [g]overnment." *Id.* (quoting *United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998)). In *Grimmond*, the Fourth Circuit observed:

> The Supreme Court recognizes that some reasons for delaying a trial are improper, e.g., harassment. *See United States v. Marion*, 404 U.S. 307, 325 [] (1971). It should go without saying that improper reasons for delaying a defendant's trial are "weighted heavily against the government." *Barker*, 407 U.S. at 53. The Supreme Court also recognizes that some reasons for delaying a trial are neutral, e.g., an understaffed prosecutor's office. *See Strunk v. United States*, 412 U.S. 434, 436 [] (1973). Although labeled neutral, "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531 []. Finally, the Supreme Court recognizes that some reasons for delaying a trial are valid, e.g., a missing witness. *See id.* Valid reasons for delaying a trial are weighted in favor of the Government. *See id.*

There is no evidence Defendant actively was a fugitive from law enforcement or otherwise was at fault for the delay. Defendant states he remained in the same residence with his mother and led an ordinary life as son, father, and employee until he was in a serious car accident, at which time the hospital staff discovered the outstanding arrest warrant. Defendant claims he had no idea prior

to his arrest he had been indicted or a warrant issued. Defendant further asserts the delay was uncommonly and unreasonably long because the charge against him was not complicated – Count 20 alleges only a single substantive drug transaction involving two participants aiding and abetting each other. Defendant states the evidence as to him was available and consisted of visual and audio recordings of a controlled buy, as well as a quantity of drugs purportedly secured by a confidential informant. Thus, there was no need for the government to obtain additional evidence in order to indict him.

The government advances two reasons for the delay. First, the government argues it diligently attempted to locate Defendant after issuance of the arrest warrant. On March 12, 2019, law enforcement traveled to a residence in Jackson, South Carolina, where they believed Defendant stayed with a girlfriend. The girlfriend stated to law enforcement Defendant "might as well" live with her but he had left earlier in the day. Law enforcement informed the girlfriend a warrant had been issued for Defendant's arrest.[2] ATF thereafter entered Defendant's information into the National Crime Information Center ("NCIC") database and checked South Carolina labor records in an effort to determine Defendant's place of employment.

Second, the government asserts the commencement of the COVID-19 pandemic in January 2020 caused a significant portion of the delay. The government notes court operations were curtailed commencing March 16, 2020 and extending through March 8, 2022. According to the government,

---

[2]The government alleged in its response to Defendant's motion to dismiss and at the hearing Defendant and his girlfriend kept in contact, such that she would have told him a warrant for his arrest had been issued. The government also stated at the hearing Defendant's name was released to the press and local media, along with the fact he was subject to an active arrest warrant. Defendant denies any knowledge of the indictment or warrant. The government adduced no evidence to support its allegations. ECF No. 424 at 18, 30 (Transcript of Hearing on Motion to Dismiss Indictment).

5

law enforcement agencies focused almost exclusively on arresting the most serious and violent offenders during that period, in part to avoid overcrowding jails when court operations were at a standstill.³

On November 10, 2022, after the worst of the pandemic had subsided, ATF received a notice from the South Carolina Department of Motor Vehicles ("SCDMV") indicating a change of address for Defendant to Fairfield Road, Beech Island, South Carolina. The case agent surveilled the property several times in November and December 2022, but did not observe Defendant. On May 22, 2023, ATF received another notice of change of address to Atomic Road, Beech Island, South Carolina. The case agent surveilled the Atomic Road property, but did not locate Defendant.

At the hearing, the court agreed it would be appropriate to disregard the time COVID-19 impacted law enforcement operations. *Accord United States v. Sherman*, Criminal Case No. 4:21CR51(RCY), 2022 WL 2124496, at *5 (E.D. Va. June 13, 2022); *United States v. Pair*, 522 F. Supp. 3d 185, 194-95 (E.D. Va. Feb. 26, 2021)(collecting cases). This argument is valid and weighs against finding Defendant's right to a speedy trial was infringed.

However, the court expressed its desire to understand exactly the efforts undertaken by law enforcement after the pandemic subsided. The court explained its concern that,

> if Mr. Scott had not been in a car accident and not been taken to a hospital, that, for whatever reason, checks for outstanding warrants, that he still wouldn't be here. I want to know when the actions started and when they stopped.

---

³Court criminal proceedings were not completely cut back. Co-Defendant Keith Williams was sentenced to 184 months custody, entered December 21, 2020; Co-Defendant Charlie Edward Carter was sentenced to 70 months, entered April 14, 2021; Co-Defendant Benjamin Roper was sentenced to 21 months, entered June 22, 2021; Co-Defendant Larry Thomas was sentenced to 87 months, entered September 9, 2021; Co-Defendant Kevin D. Sheppard was sentenced to 60 months, entered September 30, 2021; and Jerome Morris Simmons to 33 months, entered January 31, 2022. These events occurred during the pandemic.

ECF No. 424 at 17.

The court queried the government as follows:

THE COURT: What about the codefendants? They're all in this conspiracy together in the Aiken area. Nobody knew where Mr. Scott was?

MS. GORE: Your Honor, some of those codefendants were in Aiken, some were in Georgia, but at that –

THE COURT: He was like 12 miles from downtown Aiken, so it's not like he had fled to another state. I mean, he maintains he was at his mother's residence this entire five years.

MS. GORE: Yes, Your Honor, and that is completely contrary to the information we have that was reported on his DMV records.

THE COURT: Well, did you go to the mother's house?

MS. GORE: They did conduct surveillance at ▮ Fairview Road, Your Honor, and they did not see Mr. Scott there – on Old Town Road, I'm sorry. Mr. Scott was not seen when they conducted surveillance there.

THE COURT: How long did you surveil there?

MS. GORE: Agent Moreland surveilled for several hours on different dates and time, Your Honor, to attempt to locate Mr. Scott.

THE COURT: And what year was that?

MS. GORE: Some of this time was after they received that information from the DMV record, and I do have a copy of that here with me, Your Honor. The Fairview Road came up for the first time in May 2023 [*sic*] and that was when he changed his address. That address was again changed in December 2023 [*sic*] to ▮ Atomic Road. Your Honor, Agent Moreland also conducted surveillance at that address.[4]

We also have information that at the time of the indictment, he was working at a car dealership in South Carolina. They went to that dealership and learned he was no longer working there.

---

[4]The government refers to inconsistent dates in its filings and argument.

       Your Honor, additionally, we just recently learned that Mr. Scott was apparently going to West Virginia to also work.[5] We found out that he was working in Georgia as a welder and he would leave oftentimes at 5:00, 6 o'clock in the morning.

       So, again, he was -- has associations to three different states. This was not the result of ATF or law enforcement not exercising diligence. They were unable to locate him, Your Honor.

THE COURT:      So is that an excuse? If you're unable to locate the defendant –

MS. GORE:      No, Your Honor, that –

THE COURT:      – does that give you – let's say ten years goes by and y'all keep checking the databases and waiting to see if a phone call comes in.

MS. GORE:      No, Your Honor, that is not an –

THE COURT:      Well, wait. I mean, four years is a long time.

MS. GORE:      Yes, Your Honor, and we certainly don't dispute that at all. Four years is a lengthy period of time. But even if the investigative steps to locate Mr. Scott were imperfect, that is not the government operating in bad faith. There is no –

THE COURT:      No, I'm not saying that.

MS. GORE:      No.

THE COURT:      I know that.

MS. GORE:      Yes, Your Honor.

THE COURT:      I'm not suggesting that. What I'm saying is, is that if what you do doesn't work, let's say even what you do, you think is reasonable at the time, doesn't work, even though he's in the same place for five years and he's living in Aiken, working not too far from there, y'all can't find him and you can't find him and you can't find him, how long can you do that before his speedy trial rights are –

---

[5] Defendant often traveled to West Virginia on the weekends to help his father maintain a farm. It does not appear the government reached out to Defendant's father to ascertain Defendant's location. ECF No. 420 at 18 (Transcript of Detention Hearing).

8

> now, I'm not – it would be different if he were evading or something, but I'm just talking about, he's there, he doesn't know what's going on, how many years can you go on trying to locate him and failing to locate him? What's the number?

ECF No. 424 at 20-23.

The government informed the court law enforcement had conducted surveillance at Defendant's mother's house during May and June of 2022, but did not find any evidence Defendant lived there. *Id.* at 29. Subsequently, ATF continued to monitor NCIC to ascertain Defendant's whereabouts. At this point, the court summed up its reservations:

> If he hadn't been in the hospital and gotten that call, is there anything that would have been happening that would change him from still being unarrested? I mean, that's – it just seems like it's kind of open-ended at that point. That you can say we looked, we kind of threw our hands up, and several years later we get lucky and somebody else finds him and he hasn't lost his speedy trial rights. That's my concern.

*Id.* at 31.

The only affirmative acts the government describes are (1) visiting Defendant's girlfriend's residence in March 2019; (2) issuing a press release in 2019; (3) attempting to identify Defendant's employer in 2019; (4) entering Defendant's name into the NCIC database in 2019; (5) surveilling a house on Fairview/Old Town Road in Beech Island in 2022; and (6) surveilling a house on Atomic Road in Beech Island in 2023.[6] The final two actions were made in response to information provided by SCDMV. The government reported at the hearing ATF thereafter continued to review information as it came in from NCIC as well as South Carolina labor records. ECF No. 424 at 29. The government agreed with the court's remark, "So you were waiting to see if you received from somebody else information about [Defendant's] whereabouts." *Id.*

The paucity of active investigative measures is inconsistent with the government's position

---

[6]Again, the dates of the surveillance are unclear.

Defendant was a prosecutorial priority because the *Sheppard* and *Gartrell* charges involved a multi-agency, multi-jurisdiction operation targeting a specific group of individuals selling firearms and drugs in the Aiken area.

The court finds ATF's efforts were inadequate. "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657. The court concludes the second *Barker* factor weighs against the government.

C.     The Defendant's Assertion of the Right.

A defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. The failure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial. *Barker*, 407 U.S. at 531-32.

To recap, Defendant was arrested on December 4, 2023.[7] An attorney was appointed for Defendant on December 6, 2023. Defendant, through counsel, filed a motion for discovery on December 11, 2023. On December 27, 2023, Defendant, through counsel, filed a motion to continue, noting that, at the detention hearing, "the government was unable to explain why the defendant had not been arrested since the March 2019 indictment, despite having the same residence and employment during the intervening four plus years." ECF No. 402 at 2. Defendant also stated he "was presented with some informal discovery prior to the bond hearing but has not received any additional discovery." *Id.* Counsel affirmed she had conferred with Defendant and advised him of

---

[7]As did the lower court in *Doggett*, the court accepts Defendant's declaration he was unaware he had been charged with a federal offense, and finds the arrest to be the earliest time Defendant could assert his constitutional speedy trial rights.

his rights under the Speedy Trial Act, and he knowingly and voluntarily waived those rights. *Id.* at 3. On March 19, 2024, Defendant, through counsel, filed a nearly verbatim motion to continue, with the exception of stating counsel had received additional discovery on February 23, 2024 that she needed to review and investigate. ECF No. 406 at 2. Defendant again waived his Speedy Trial Act rights. Defendant filed his motion to dismiss indictment on May 8, 2024.

The government submits Defendant failed to assert his Sixth Amendment right to a speedy trial or any violation of that constitutional right until he filed his motion to dismiss. Although the length of time between the indictment and Defendant's arrest was discussed at the detention hearing and alluded to in each motion to continue, the government contends Defendant did not make a timely and vigorous assertion of his constitutional speedy trial rights.[8] According to the government, Defendant "has shown little urgency or genuine desire to proceed to trial until May 2024, five months after his initial appearance and arraignment in open court." ECF No. 421 at 9-10.

At the hearing, the court observed, "[I]t seems to me that it would be difficult for the defense lawyer to be able to evaluate whatever the position is without having some time to look into the case to be able to assert this challenge to a speedy trial." ECF No. 424 at 3. The court further opined the assertion of Defendant's right to a speedy trial was brought to the court's and government's attention "about as soon as it could have been." ECF No. 424 at 36. The court concludes Defendant asserted his right to a speedy trial in due course. This factor weighs in favor of Defendant.

D.  <u>Prejudice to the Defendant</u>.

"[U]nreasonable delay between formal accusation and trial threatens to produce more than

---

[8]The waiver of Speedy Trial Act protections is not dispositive of a constitutional speedy trial claim. *Pair*, 84 F.4th at 590.

one sort of harm, including 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532). "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Id.* (quoting *Barker*, 407 U.S. at 532).

Defendant states that after he was arrested in the hospital, he was transported to a county jail with no medical facilities and was prevented from receiving his prescribed narcotic pain relief medication for three nights spent in pretrial custody. Defendant contends his defense will be impaired as a result of the lengthy delay because co-Defendant Sheppard pleaded guilty pursuant to a cooperation agreement, an advantage Defendant was not afforded. Defendant asserts he does not have information regarding the confidential informant involved in the controlled buy, and he has not had an opportunity to test the methamphetamine seized as the result of the controlled buy for which he was charged. He also claims prejudice because the trial judge who presided over this case and *Gartrell* no longer is a member of this court.

The government observes Defendant is free on bond so oppressive pretrial incarceration is not an issue. The government also disputes Defendant's assertion his right to defend himself has been impaired. The government states it has preserved the evidence and witness testimony is available, making it unlikely Defendant's case has been harmed in any way by the delay. The court further notes that, as in *Doggett*, Defendant's presumed ignorance of the indictment and arrest warrant eliminates an argument he experienced anxiety and concern during the delay.

At the hearing, the court noted Defendant's argument regarding a co-defendant willing to testify pursuant to a cooperation agreement is something that happens in every case. ECF No. 424

at 7.  The court further observed consistency in sentencing is crucial, especially in situations where a new judge takes over a criminal action; thus, a change in judge does not result in appreciable prejudice.  *Id.* at 9.  In the court's view, however, Defendant articulated the potential for prejudice if he is required to employ an investigator to locate the confidential informant or is not able to test the methamphetamine forming the basis of his offense.

Affirmative proof of particularized prejudice is not essential to every speedy trial claim.  *Doggett*, 505 U.S. at 655.  In this case, the court concludes Defendant was prejudiced by the actions causing the delay.  As the *Doggett* Court explained:

> And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, *cf. Arizona v. Youngblood*, 488 U.S. 51[] (1988), and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

505 U.S. at 657.

The court made clear its misgivings that lackadaisical effort on the part of an agency tasked with apprehending those charged with crimes could undermine the Sixth Amendment to such a degree a defendant would find it impossible to assert a constitutional speedy trial claim.  The court is confident the ATF's approach to apprehending Defendant is not the norm.  Nevertheless, based on the factors that weigh against the government and the implications of subverting a constitutional right, the court concludes Count 20 of the indictment filed March 5, 2019 (ECF No. 1) as to Defendant must be **dismissed**.

## IV.  CONCLUSION

For the reasons stated, Count 20 of the indictment pending is **dismissed, with prejudice**, as to Defendant Rudolph Keith Scott.

**IT IS SO ORDERED.**

/s Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina

July 22, 2024